Joe C. **FOWLER, Jr., Plaintiff,**

v.

Henry **WILLIAMSON, Individually and as Principal of Hickory High School, Charles Mason, Individually and as Assistant Principal of Hickory High School, Dr. Joseph Wishon, Individually and as Superintendent of Hickory City Schools, Harold K. Poovey, Individually, Sam Dula, Individually, Gene Smith, Individually, Mrs. Lois Young, Individually, Mrs. Martha Karslake, Individually, James H. Garrett, Individually, Dr. Donald G. Hayes, Individually, Harold K. Poovey, Sam Dula, Gene Smith, Mrs. Lois Young, Mrs. Martha Karslake, James H. Garrett and Dr. Donald G. Hayes, Members of the Board of Education of the Hickory Administrative School Unit, Defendants.**

No. ST–C–77–50.

United States District Court,
W. D. North Carolina,
Statesville Division.

March 2, 1978.

Samuel H. Long, Jr., Newton, N. C., for plaintiff.

James P. Crews, E. Fitzgerald Parnell, III, Golding, Crews, Meekins, Gordon & Gray, Charlotte, N. C., James C. Fuller, Jr., Chambers, Stein, Ferguson & Becton, Charlotte, N. C., for defendants Williamson, Mason and Wishon.

James T. Patrick, Patrick, Harper & Dixon, Hickory, N. C., for defendants Poovey, Dula, Smith, Young, Karslake, Garrett and Hayes.

A. Terry Wood, Hickory, N. C., for defendant Board of Education.

## MEMORANDUM AND ORDER

WOODROW WILSON JONES, Chief Judge.

The Plaintiff, a recent graduate of Hickory High School seeks to recover $500,000.00 in compensatory damages from the Defendants, Henry Williamson, the principal of the high school; Charles Mason, the assistant principal of the high school; Dr. Joseph Wishon, the superintendent of Hickory City Schools; and Harold K. Poovey, Sam Dula, Gene Smith, Mrs. Lois Young, Mrs. Martha Karslake, James H. Garrett and Dr. Donald G. Hayes, members of the Hickory Board of Education. He sues all Defendants individually and in their representative capacity. He alleges that they violated his constitutional rights by adopting and enforcing a dress code regulation for graduating seniors and that such conduct denied him the right to participate in the graduation ceremony on June 2, 1977.

He brings his action under the provisions of the Fourteenth Amendment and Title 42 U.S.C.A. Section 1983 and alleges that this Court has jurisdiction of the cause under Title 28 U.S.C.A. Section 1343(3).

The Defendants have moved to dismiss the action under Rule 12(b)(1), (2) and (6), Federal Rules of Civil Procedure on the grounds that this Court lacks jurisdiction over the subject matter and the parties and the complaint fails to state a cause of action on which this Court can grant relief.

The Motions were heard by the Court in Statesville, North Carolina on February 21, 1978 and after consideration of the pleadings, briefs and arguments of counsel the Court now enters its findings and conclusions.

The Plaintiff is an 18-year old citizen and resident of Hickory, North Carolina and completed sufficient academic requirements to graduate from the Hickory High School on June 2, 1977. However, on the night of the formal graduation exercises he was denied permission to participate in the ceremonies because of his attire. He contends that he was in line at the proper time and properly dressed when the Defendant Williamson, the principal of the school approached and ordered him out of the line claiming that he was in violation of the dress code. He further contends that he went home, changed clothes and returned to the school but was denied admission by the Defendant, Mason, the assistant principal on the grounds that the graduates had already entered the building and the ceremony was in progress.

The Plaintiff contends that the dress code prepared and distributed by the Defendant, Williamson "was so vague, arbitrary and unreasonable as to be on its face unenforceable and unconstitutional, and which was discriminatory, both on its face and in its enforcement . . ." and that if it were valid, the Plaintiff was not in violation. He contends that he was wearing "a pair of brushed denim pants purchased at substantial cost" and a pair of dress boots all of which were fashionable as dress wear and in common use for "dress up" occasions. He says that the Defendants Williamson and Mason acted arbitrarily, capriciously and out of ill will and denied him "the once-in-a-lifetime opportunity to receive the honor, respect and admiration that accompanies" participating in high school graduation exercises to his great damage.

The Defendant Williamson in his capacity as principal of the school prepared and distributed for posting in the home rooms of the seniors of the high school a written notice which included the following:

"Dress for graduation:

Females: Comfortable shoes; dresses (no long pants).

Males: Dress pants as opposed to jeans; shirts and ties; shoes and socks.

Placement of Cap: Peak should be in center of forehead just above eyebrow level. Bobby pins may be needed to secure cap.

Graduation—June 2, 8:00 p. m.

All persons graduating should be in line, properly dressed by 7:30 p. m."

The parties agreed at the hearing that the Plaintiff received his diploma on graduation night and is now enrolled in Lenoir-Rhyne College. He seeks no injunctive or declaratory relief—only compensatory damages.

The first question for determination by the Court is whether the Plaintiff has stated a cause of action against the members of the board of education. There is no allegation that the board members personally participated in any manner in the acts of denying the Plaintiff admittance to the graduation exercises. In fact, the Plaintiff expressly alleges that the acts "were in violation of the established Rules and Regulations of the Hickory City Schools Board of Education." At the hearing the attorney for the Plaintiff conceded that he would have no evidence to show any personal involvement of the members of the board.

In *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) the Court said:

"Although § 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions,' *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), '[l]iability will only lie where it is affirmatively shown that the official charged acted personally in

the deprivation of the plaintiffs' rights. The doctrine of *respondeat superior* has no application under this section.' *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md.1971), *aff'd* 451 F.2d 1011 (4th Cir. 1971). Having failed to allege any personal connection between Gibbs and any denial of Vinnedge's constitutional rights, the action against him must fail. Accord *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973); *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971)."

■ It therefore follows that since the Plaintiff's alleged cause of action against the individual members of the board of education is based upon the doctrine of *respondeat superior* without any allegation of personal involvement of the board members and with no apparent evidence of any affirmative acts on their part the action against them must be dismissed.

The next issue is whether the action against the Defendant Wishon, the superintendent of the school system should be dismissed. Here again, there is no allegation that he personally committed any act in denying the Plaintiff's participation in the graduation exercises. Plaintiff's attorney requests in his brief that he be allowed to amend to allege that the superintendent as administrative head of the city school system "(1) knew or had reason to know of the existence of the graduation conduct and dress code; (2) knew or should have known that the code was on its face constitutionally defective; (3) knew or should have known that the code could or would be applied to the Plaintiff or some other graduating senior; and (4) in failing to exercise his responsibility as superintendent to prevent a subordinate from violating a student's constitutional rights thereby actively acquiesced in the violation of those rights and can thereby be held liable together with Defendants Williamson and Mason who actively deprived the Plaintiff of those rights."

He cites and relies upon two district court cases, namely, *Ka-Haar, Inc. v. Huck*, 345 F.Supp. 54 (E.D.Wis.1972); and *Hernandez v. Noel*, 323 F.Supp. 779 (D.Conn.1970). His reliance upon these cases is misplaced. In the first case, *Ka-Haar, Inc. v. Huck*, the plaintiff sued members of the Racine Common Council Licensing Committee for damages alleging that they recommended the revocation of its liquor license and that their acts were done wilfully, knowingly, and purposefully with specific intent to deprive the plaintiff of its liquor license. Since the complaint contained allegation of the personal involvement of the defendants in the alleged wrongful acts the action survived a motion to dismiss. In *Hernandez v. Noel*, the plaintiffs in a class action sought injunctive relief against the mayor, members of the city council and two police officers for alleged deprivations of their constitutional rights because of their Puerto Rican ancestry. The complaint survived the defendants' motion to dismiss with the court holding that there is abundant authority for the allowance of a § 1983 suit for injunctive relief against city officials in those capacities.

■ The complaint in this case with the amendment cannot survive Wishon's motion to dismiss. It is still bottomed on *respondeat superior* without any allegation of affirmative participation in the alleged wrongs by the superintendent. There is no allegation that he gave any order to prevent the Plaintiff from participating in the exercise or was present at any time during the alleged wrongful acts of the principal and his assistant. Under all the cases examined by the Court it appears that Wishon's motion to dismiss must be allowed since the Plaintiff seeks only compensatory damages.

The last question for the Court's determination is whether the complaint states a cause of action against the two remaining Defendants, Williamson, the principal and Mason, the assistant principal. The Defendants assert several reasons why the complaint should be dismissed for failure to state a cause of action upon which this Court could grant relief, but only two of them warrant consideration. First the Defendants contend that the Plaintiff was not deprived of "life, liberty or property" with-

in the meaning of the Fourteenth Amendment and second they were acting in good faith within their official capacities as school officials and are entitled to official immunity.

█ Since the Supreme Court decision in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), it is difficult to determine the extent of "qualified immunity" granted school officials. Suffice it to say that here the Plaintiff alleges a lack of good faith and such allegations will defeat a motion to dismiss on this ground.

The Defendants' contention that the Plaintiff has not been deprived of "life, liberty or property" within the meaning of the Fourteenth Amendment raises an issue which must be explored in detail. The facts are not in dispute. Assuming that the Plaintiff can prove all he alleges, does this wrong rise to constitutional proportions requiring federal court action?

In *Goss v. Lopez*, 419 U.S. 565, 572–573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975) the majority noted:

> "The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)."

The Plaintiff has not been deprived of life and it is not reasonable to assert that his denial of participation in a short graduation ceremony would constitute an arbitrary deprivation of liberty as indicated in *Goss v. Lopez, supra*. It would not be reasonable to contend that his "good name, reputation, honor, or integrity is at stake" because of such a denial. With "life" and "liberty" eliminated we must now examine "property" to determine if such right exists here.

It appears that we must look to the law of North Carolina to determine what protected interests in property are created and defined by such law. The State has undertaken the task of furnishing a public education to all citizens of the ages from six to eighteen, or until a standard high school course of study has been completed. Art. IX, Secs. 1 and 2, N.C. Constitution and N. C. G. S. 115–1 and 1.1. The Plaintiff therefore had the right to attend public school and to graduate if he met the requirements, and this right has been recognized as a property right. In *Goss v. Lopez, supra*, the Court held:

> "Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."

The Plaintiff has been provided a high school education as required by State law and was given a diploma certifying that he had graduated. He was denied participation in the graduation ceremonies. Does he have such property interest in attending the public graduation ceremony as to require constitutional protections? There is no North Carolina case on the subject of what rights a student has in walking across the stage to receive a diploma, and no other court has passed upon that issue separately. The Plaintiff cites and relies upon *Spence v. Bailey*, 325 F.Supp. 601 (W.D.Tenn.1971), aff'd 465 F.2d 797, but this case involved a student who was denied a diploma and participation in graduation for his refusal to participate in ROTC. The Court decision was based upon the First Amendment right of freedom of religion and is therefore quite different from the case at bar. In *Moran v. School District # 7, Yellowstone County*, 350 F.Supp. 1180, (D.Mont.1972) the Court struck down as violative of the equal protection clause a school regulation prohibiting married students from participation in extracurricular activities, including athletics. In *Warren v. National Ass'n of Sec. School Principals*, 375 F.Supp. 1043 (N.D.

Tex.1974) the Court ordered the reinstatement of a high school student to the Honor Society who had been expelled without due process. In *Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1971) the Court struck down on First Amendment grounds a school regulation prohibiting the distribution of any printed material without the express permission of the principal and reinstated a student who had been suspended for violation of the regulation. *Kelley v. Metropolitan County Bd. of Ed. of Nashville, Etc.*, 293 F.Supp. 485 (M.D.Tenn.1968) dealt with the school board's decision to suspend an entire high school from interscholastic athletic competition after it had been integrated by court order. The Plaintiff sought and obtained injunctive relief. *Lee v. Macon County Board of Education*, 283 F.Supp. 194 (M.D.Ala.1968) was another school desegregation case and the court enjoined the operation of dual athletic associations. Suffice it to say that a close reading of all the cases cited by the Plaintiff and those found by the Court dealt with other problems in addition to the graduation ceremony.

In *Valentine v. Independent School Dist. of Casey*, 191 Iowa 1100, 183 N.W. 434 (1921) the Iowa Supreme Court held that a school board could not withhold diplomas from three girl graduates, otherwise qualified, because they refused to wear caps which were misfits and gowns which smelled of formaldehyde from a recent fumigation of the school by the health department. The court held that the board may deny the right of a graduate to participate in the public ceremony of graduation unless a cap and gown is worn.

The North Carolina Court has not addressed this subject. An examination of the decisions on kindred matters leads to the conclusion that the Court would hold that the expectation of a graduate to participate in the graduation ceremony would not rise to the level of a property right. In *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971) the Supreme Court held that an enforceable expectation of continued public employment can exist only if the employer, by statute or contract, has actually granted some form of guarantee. See, *Nantz v. Employment Security Commission*, 290 N.C. 473, 226 S.E.2d 340, where the court held that employment by the State or one of its political subdivisions or agencies, does not *ipso facto* confer tenure or a property right in the position. See also *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 and *Board of Regents v. Roth*, 408 U.S 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. For cases holding that there is no property interest and no right protected under federal law in participation by high school students in interscholastic activities see: *Sanders v. Louisiana High School Athletic Ass'n.*, 242 So.2d 19 (La.App.1970); *Bruce v. South Carolina High School League*, 258 S.C. 546, 189 S.E.2d 817 (1972); and *Dallam v. Cumberland Valley School District*, 391 F.Supp. 358 (M.D.Pa.1975).

This Court concludes that the Plaintiff has not been deprived of life, liberty or property or other constitutional rights by the Defendants. If he has been damaged by the wrongful conduct of the Defendants his remedy would be in the courts of the State of North Carolina. It was never intended that federal courts handle all claims of deprivation of rights advanced by the millions of public school students in the land. The complaint fails to state a claim rising to constitutional proportions over which this Court would have jurisdiction and it must be dismissed.

IT IS THEREFORE ORDERED that the Plaintiff's action be and the same is hereby dismissed.