The Honorable Jerry Bookout State Senator P.O. Box 415 Jonesboro, AR 72401
Dear Senator Bookout:
This is in response to your request for an opinion on five questions involving the Arkansas Activities Association. Your specific questions are set out below and answered in the order posed.
 1. Under what authority does the Arkansas Activities Association [AAA] exist and have the power to determine educational standards and residency requirements for a student's participation in a school district's educational program? A school district's educational program being defined as any activity/event provided during the regular school day or any other time, when supervised by certified school district personnel, when the supervision is part of the certified school district personnel's responsi-bilities?
In response to your first question, the Arkansas Activities Association, or "AAA," was originally founded in 1904 by seven high schools and colleges and was called the "Arkansas State Athletic Association." In 1912, the high schools separated from the colleges and became the "Arkansas Athletics Association." Membership increased rapidly, and eventually the name of the organization was changed to the "Arkansas Activities Association." It is a "nonprofit" "association" of member school districts. The Association accepts members who sign written agreements to be governed by, and abide by, the rules of the Association. It exists by virtue of this "association" of school districts, and it is through this membership, and written agreement with school districts, that the AAA gains its power to determine educational standards and residency requirements for student participation in AAA activities. Essentially, the Association represents agreement of the member school districts as to the conduct of school athletics and activities.
Your second question is as follows:
 What is the legal definition of a voluntary organization?
The term "voluntary organization" is not a term defined by law. The more accurate characterization of the AAA is an "association." The legal definition of an "association" is "a body of persons acting together, without a charter, but upon the methods and forms used by corporations for the prosecution of some common enterprise." Weaver v. First National Bank ofMemphis, 216 Ark. 199, 224 S.W.2d 813 (1949). It has also been defined as being a "term of vague meaning used to indicate a collection or organization or persons who have joined together for a common object. Also the persons so joining; the state of being associated." Black's Law Dictionary (5th ed. 1979) at 111. It is also generally held that "[i]t is not a legal entity separate from the persons who compose it." Id.
Your third question is as follows:
 How can the Arkansas Activities Association [AAA] be classified as a voluntary organization when a school district's baseball, basketball, football, tennis, golf or other athletic team and band, choir and other group is `required' to be a member of the AAA to participate in a conference, district, state, invitational, or other tournament/events?
In response to your third question, membership in the AAA is not mandatory. Each school district may choose whether to become a member and whether to sign the agreement to abide by the rules of the Association. School districts across the state may choose not to be a member of the Association, but this choice will give them no right to participate in AAA sponsored tournaments. In short, if the tournaments are sponsored and funded by the AAA, it may choose the criteria for the participants, as long as it does so in compliance with constitutional principles. See ArkansasActivities Association v. Meyer, 304 Ark. 718, 805 S.W.2d 58
(1991). It has also recently been stated that" [i]t legitimately falls within the purview of a voluntary association like the AAA, acting in conjunction with the schools, to regulate such activities." 304 Ark. at 722-723.
The implication contained in your question that participation in the AAA is not "voluntary" stems not from the nature or organization of the Association, but rather from the fact that most school districts choose to be members. School districts across the state are free to decline membership in the AAA and act together to sponsor their own activities and tournaments.
Your fourth question is as follows:
 In a memo from Ruth S. Steele, Arkansas Department of Education [12/22/87] Ms. Steele states the residency [domicile] requirements for attendance in a local district. Local, state and federal taxpayer dollars are used for the presentation of school district programs and for the supplies, equipment and facilities to carry out those programs. Since the activities and events the AAA claims jurisdiction over are events for a school district where a public agency has already determined residency and where the events are paid for with taxes, how can the AAA be permitted to determine residency [domicile] requirements for school district program participation other than those defined by the ADE?
The acts cited in the memorandum you have enclosed pertain to the eligibility of students to attend school in certain districts. These provisions do not govern the eligibility of students to participate in athletics or activities sponsored by, or culminating in tournaments organized by the AAA. Again, the Arkansas Supreme Court has stated that it legitimately falls within the purview of the AAA to regulate these school activities. Meyer, supra. It has also stated that there is clearly no constitutional right to play sports or engage in other school activities. Id. Additionally, one Arkansas statute which governs the transfer of students wishing to take classes not offered by their district of residence, states that "[e]ligibility for participation in inter-school activities by any such student shall be in accordance with regulations of the Arkansas Activities Association." A.C.A. § 6-18-204(d). The legislature has, therefore, at least in one instance, also recognized the authority of the Association to make rules governing such activities.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh